Edgar G. Minton v. Commissioner.
Edgar G. Minton v. Commissioner
Docket No. 13678.
United States Tax Court
1948 Tax Ct. Memo LEXIS 100; 7 T.C.M. (CCH) 638; T.C.M. (RIA) 48178; August 31, 1948
*100 Gerald L. Wallace, Esq., for the petitioner. Thomas R. Wickersham, Esq., for the respondent. HARLAN
Memorandum Findings of Fact and Opinion HARLAN, Judge: The Commissioner determined a deficiency in petitioner's income tax liability for the year 1943 in the amount of $28,609.65. Because of the operation of the Current Tax Payment Act of 1943, the income tax return for 1942 is also involved. The respondent increased the petitioner's gross income for 1942 by $26,577.45 and for 1943 by $25,513.26. The petition raises two issues on which the parties have reached an agreement since the trial of the case: I. The petition complains that "the respondent erred in not allocating to Marjorie B. Minton some portion of the income attributable to the capital permitted to remain in the business or which she reinvested in the business." As to the disallowance of the interest payments, the parties have agreed as to the amounts that should be allowed in 1942 in the amount of $1,145.83 and in 1943 in the amount of $1,880.17. II. The second complaint of the petition is that "the respondent erred in failing to reduce petitioner's share of partnership income for the years 1942-43 due *101 to his failure to allow as a deduction on the partnership return, the New York State Unincorporated business tax assessment for those years." As to the refusal of the respondent to allow the deduction of an unpaid tax deficiency to the State of New York accrued by the partnership in 1942 and 1943, when the tax was being contested, the petitioner concedes that the ruling of the respondent was correct. The partnership books and tax returns were kept on an accrual basis for fiscal years ending September 30th of each year. The partnership return for the fiscal year 1942 claimed a deduction for New York State Unincorporated Business Tax in the amount of $3,318.80 and for the fiscal year 1943 in the amount of $3,265.54. The deficiency assessments claimed by New York amounted to $9,234.64 for the fiscal year 1942 and $9,146.89 for the fiscal year 1943. The remaining question for determination is: Is $25,431.62 received by Marjorie B. Minton from Mainzer Minton Company in 1942 and $23,633.09, similarly received by her in 1943, income taxable to the petitioner? Findings of Fact The petitioner is an individual residing in Scarsdale, New York. He filed his income tax returns for 1942 *102 and 1943 with the collector of internal revenue for the second district of New York. He married his present wife, Marjorie B. Minton, on May 19, 1927. At the time of his marriage petitioner was employed by William Alsberg Company, which was engaged in the business of converting cotton goods. Shortly after his marriage he was informed that his employer was about to be liquidated. Upon the insistence of his wife he conferred with one Maurice H. Mainzer, who had been connected with the Alsberg Company for about twenty years, and with Elmer Thaney, another employee, concerning the formation of a corporation to engage in converting cotton goods. The Mainzer Minton Corporation was organized in October 1927, with preferred and common stock, each of a par value of $100 issued as follows: Common Stock
Preferred Stock
No. of
No. of
Name of Stockholders
Shares
Amount
Shares
Amount
Maurice H. Mainzer
200
$20,000.00
50
$ 5,000.00
Edgar G. Minton
150
15,000.00
Elmer Thaney
50
5,000.00
William Alsberg
150
15,000.00
Arthur M. Bier
50
5,000.00
Total
400
$40,000.00
250
$25,000.00
Of the $15,000 which Minton was required *103 to raise he borrowed $2,950 from his wife Marjorie, $5,000 from her father, Arthur M. Bier, $1,500 on some insurance policies, and $2,000 from an uncle. $3,550 came from his own savings. His father-in-law purchased $5,000 worth of preferred stock in addition to the $5,000 which he lent to Minton directly. From September 1927 to July 1934 Mrs. Minton received from a trust fund income aggregating $2,300 which she deposited as received either in Minton's account or in a joint account belonging to her and her husband. The money advanced by Arthur M. Bier, both as a loan to Minton and for the purchase of the preferred stock was because of his desire to be of assistance to his daughter. The Mainzer Minton Corporation was dissolved on December 19, 1941, and its assets were distributed on December 22, 1941. At that time its 450 shares of common stock were held as follows: Shares of
Stockholder
Common Stock
Maurice H. Mainzer
200
Edgar G. Minton
200
Elmer Thaney
50
Total
450 The preferred stock was paid off on dissolution and the assets were distributed in proportion to the common stock holdings. On December 19, 1941, Maurice H. Mainzer, Edgar G. Minton and *104 Elmer Thaney entered into an agreement for the formation of a limited partnership under the laws of New York to be known as Mainzer Minton Company. While these articles of partnership were in course of preparation, Mainzer's attention was drawn to the possibility of tax saving by taking his wife into the partnership. Thereafter on December 30, 1941, Maurice H. Mainzer, Edgar G. Minton, Elmer Thaney, Marjorie Minton and Madeline Thaney entered into a superseding contract for the formation of a limited partnership. Certificates setting forth the partnership name and address, with the names and addresses of the general partners and the limited partners, were filed in the County Clerk's Office, the one for the partnership of December 19, 1941, on December 20, 1941, and the certificate pertaining to the December 30, 1941 partnership on March 28, 1942. The capital accounts of the various partners were apportioned on the books as follows: Maurice H. Mainzer
$203,000.00
Edgar G. Minton
163,000.00
Marjorie B. Minton
40,000.00
Elmer T. Thaney
25,000.00
Madeline Thaney
25,000.00
Total
$456,000.00 Marjorie B. Minton's capital account of $40,000 resulted from instructions *105 given by Minton to the accountants to enter $40,000 of his capital interest to the credit of Mrs. Minton. The petitioner filed a gift tax return for the year 1941 in which the $40,000 was included as a taxable gift but because of the specific exemption no gift tax was then paid. Subsequently, however, the Commissioner asserted a deficiency in gift tax based upon a higher valuation which the Commissioner determined and the matter was settled by the payment of a tax of $160. After the formation of Mainzer Minton Corporation Marjorie B. Minton performed part-time services for the corporation for a period of not more than four months. She served as telephone operator and typist and performed general office work and later on she occasionally assisted when the business needs of the company required some additional work. She also assisted in entertaining the company's customers and their wives. She performed no services for the partnership, Mainzer Minton Company, and was not required so to do by the articles of the partnership. During the existence of the Mainzer Minton Corporation both Mainzer and Minton drew salaries for their services to the corporation, which in 1941 were at the *106 rate of $30,000 per year. When Mainzer Minton Company was organized the same salaries were continued to be paid by the partnership and it was provided in the partnership agreement that such salaries should be paid not to exceed $40,000 per year. In 1935 Marjorie Minton inherited $90,000 which she deposited in the Manufacturers Trust Co. The income which she received in 1942 and 1943 from Mainzer Minton Company she deposited in the same account in her own name. From this account in the Manufacturers Trust Co. at various times she loaned money to the Mainzer Minton Corporation and later to Mainzer Minton Company and received interest payments thereon as her own income. These loans were of considerable value to both the corporation and the partnership for the reason that the partnership method of transacting business required the investment of very substantial sums in inventory over periods of three or four months. The capital to carry this credit was ordinarily procured from factors who charged three-fourths of one per cent on the face amount of each account serviced, plus an interest charge of six per cent a year for the money advanced. The service charge and interest amounted to *107 approximately twelve per cent a year on those accounts serviced by the factor. The money loaned by Mrs. Minton resulted in a substantial saving to the partnership. Inasmuch as the factor required the assignment of the accounts involved, it was not feasible for either the corporation or the partnership to borrow money at banks. The partnership agreement provided for the distribution of profits as follows: "The share of profits or other compensation by way of income which each general partner and each limited partner shall receive for any fiscal year by reason of his contribution is such percentage of the profits as is determined by the ratio that his contribution bears to the total capital of the partnership as determined at the beginning of such fiscal year. The losses of the partnership for any fiscal year shall be borne by the general partners and the limited partners in the same proportion that their respective contributions bear to the total capital of the partnership as determined at the beginning of such fiscal year." For the fiscal year periods ended September 30, 1942 and September 30, 1943, the partnership reported the distribution of net profits to Mainzer, petitioner *108 and Mrs. Minton in the following amounts: 1942
1943
Maurice H. Mainzer
$129,065.46
$119,937.91
Edgar G. Minton
103,633.85
96,304.82
Marjorie B. Minton
25,431.62
23,633.09
The amounts actually distributed were determined by Mainzer. Petitioner and Marjorie Minton reported the above amounts in their individual income tax returns for the taxable years 1942 and 1943. When Marjorie Minton gave petitioner $2,950 in 1927 she had no agreement, oral or written, that such amount represented an investment of capital by her in Mainzer Minton Corporation, nor was she to receive a share in the profits of that corporation. She invested no capital originating with her in the partnership of Mainzer Minton Company, nor did she contribute any service to that company, nor in any way take part in the control and management of the business. Mainzer Minton Company is entitled to no income tax deduction because of the determination of deficiencies by the State of New York for unincorporated business tax for the fiscal years 1942 and 1943. Opinion Since the decision by the United States Supreme Court of the case of , and *109 the decisions of most questions involving the taxation of family partnerships are based primarily on one or both of these cases. The Tower case has so many features in common with the case at bar that it merits a rather full discussion. From 1933 to 1937 Tower Iron Works was a corporation with the taxpayer, president, owning 445 shares and his wife, vice president, owning 5 shares out of a total of 500. In 1937, upon advice of counsel and admittedly to reduce tax liability, a limited partnership was formed to conduct the same business carried on by the former corporation. Three days prior to the formation of the partnership the taxpayer transferred 190 shares of his corporate stock to his wife on condition that she place the total portion of the corporation assets received on liquidation in exchange for her donated shares into the partnership when formed. The taxpayer paid a gift tax on the transfer of the stock. When the partnership was formed the wife became a limited partner. Under the partnership agreement the taxpayer and the former secretary of the corporation both ceased to draw salaries. The wife used her receipts from *110 the partnership to buy what a husband usually buys for a wife, such as clothes or things for the family. Under these facts the Court held that the husband's motive to reduce taxes would not of itself cause the wife's income from the partnership to be taxed to the husband, but the Court would take the motives of the husband into consideration in determining the reality of the intent to form an operating husband and wife partnership, because "Transactions between husband and wife calculated to reduce family taxes should always be subject to special scrutiny." The Court also said: "The wife may become a general or a limited partner with her husband. But when she does not share in the management and control of the business, contributes no vital additional services, and where the husband purports in some way to have given her a partnership interest, the Tax Court may properly take these circumstances into consideration in determining whether the partnership is real within the meaning of the Federal revenue laws." The essential difference between the facts in the Tower case and the case at bar is that Marjorie Menton did contribute some capital ($2,950) to her husband 15 years before *111 the formation of the partnership. However, she owned no stock in the intervening corporation and instead of spending all of her partnership income either for unknown purposes or for family purposes she lent a part of that income to the partnership. Unlike Tower, Minton continued to draw the same salary from the partnership as from the corporation. It is our opinion, however, that these factual differences do not sufficiently distinguish the case at bar from the Tower case to justify a decision for the petitioner herein. In fact, to the extent that Marjorie Minton owned no stock in the corporation, the Tower case presents a factual situation more favorable to the taxpayer than the case at bar. In the case at bar, Marjorie Minton contributed nothing of her own directly to the partnership. Whatever contribution she made was to her husband personally fifteen years before the partnership existed. At no place in the testimony of either Minton or his wife have we found any direct, unqualified statement that Marjorie Minton's original contribution to her husband had not been returned by him to her. The nearest approach to such a statement is in the testimony of Minton when he was explaining *112 his gift to his wife prior to the formation of the partnership: "Q. What did that transfer represent in terms of your prior financial relationships? "A. Repayment of an obligation which I felt I owed as a result of her assistance in organizing and financing the inception of the business at least so far as my part was concerned." Inasmuch as Marjorie Minton not only originally contributed of her own funds but procured funds from her father and, according to the testimony was the originator of the plan to form a corporation her husband could well have been grateful to her for her "assistance" in organizing and financing the inception of the business and at the same time have returned to her in the intervening fifteen years the $2,950 which she had transferred to him. In fact, her failure at any time to receive any stock in the corporation would seem to make this a reasonable deduction. With the presumption in favor of all facts necessary to support the Commissioner's determination, it would seem that the continuance of the wife's original contribution to her husband into the assets of the partnership would have been an important piece of evidence, if true. In the Tower case the *113 evidence affirmatively showed that the wife spent her income from the partnership for family needs, whereas the record in the case at bar does not show how the wife spent the amounts she received from the partnership, except as to that portion thereof, if any, which she loaned to the partnership. However, the evidence on this point is that the loans were made to the partnership out of her individual bank account which contained a deposit of $90,000 in 1935 and from this $90,000 she loaned money to the corporation until the formation of the partnership. Thereafter she deposited the amounts she received from the partnership in the same bank where she had deposited the $90,000 and continued to make loans to the partnership out of this bank account. Here again it would seem to have been to the advantage of the petitioner to show the disposition of the amounts received from the partnership by his wife if it were other than for family needs. In the condition of the record as it is we can only guess as to what Marjorie Minton did with her partnership income. However, assuming that the loans in 1942 and 1943 were from Marjorie's partnership income, it is obvious that those same loans could *114 have been made to the partnership by Edgar Minton had the same income been received by him. We are not unmindful that in addition to advancing money to her husband at the time of incorporation, she also was the moving cause of her father's investment in the company. She worked for a period not to exceed four months in the corporate offices when the corporation was first formed, gave her husband some advice of a character not clear in the record, and entertained some of the corporate customers. But all of these services, if other than those usually rendered by a wife to her husband, were given to the corporation and not to the partnership, and most of them were too far removed in time from the partnership to have affected vitally the partnership assets. See , aff'd , cert. denied ; also , aff'd . The case relied upon by the petitioner as "of chief importance" is . In this case one Gladys Dauksza began working for the taxpayer in 1932. In 1933 he was unable to pay for an assignment of beer *115 calling for $3,000 and Gladys advanced him $1,500 from her personal savings. This money remained invested in the business and was never returned to Gladys. She and the taxpayer married in 1936 and she continued to work in the business thereafter, devoting full time, frequently from 8:00 a.m. to 11:00 p.m. After the business had prospered in 1938, an attorney advised the taxpayer of tax savings to be achieved by the formation of a partnership and on February 14, 1939, the taxpayer gave his wife $50,000 and with that as her capital contribution a partnership was formed. Thereafter the wife continued to work for the partnership as before. The Court held that only half of the income was taxable to the taxpayer. It said: "Petitioner's wife had taken an active part in the business since its inception in 1931. * * * During the taxable years 1939 and 1940 and for several prior years she had complete management of the office and performed various important duties. * * * The evidence shows we think that the success of the business was due as much to her efforts as to those of the petitioner. She furnished $1,500 of the capital upon which the business was begun in 1931. She thus had a stake *116 in the business from the beginning, apart from her interest as an employee." While the Zukaitis case is on common ground with the one at bar to the extent of a gift from the husband to the wife at the formation of the partnership, from there on there is little in common. It was definitely established in the Zukaitis case that the initial contribution by the wife was not returned and she participated actively in the management of the business. In , the taxpayer and his wife worked together for a number of years to build a restaurant business. She sometimes worked from 12 to 14 hours a day. They kept a joint bank account. In 1938 petitioner gave his wife a bill of sale for one-half of the property acquired since marriage and in 1940 he and his wife filed a partnership return and each filed a separate income tax return. The Court refused to tax all of the income to the husband. That case is also clearly distinguishable from the one at bar. Petitioner cites as "particularly significant" . In this case the Tax Court, , had held a family partnership valid for tax purposes *117 so far as the taxpayer and his two sons were concerned but invalid as to the wife and two daughters. For many years prior to the formation of the partnership all the members of the family had worked for the antecedent corporation. From 1937 to 1939 the petitioner and his wife had distributed among the children their stock so that in 1940 they all had equal interests. In 1940 a partnership was formed. The appellate court reversed the Tax Court because of its failure to recognize the wife and two daughters as members of the partnership for tax purposes on the ground that when the gifts were made in the years prior to 1940, and particularly those in 1937, there was no plan of creating a partnership and the gifts had no connection with the formation of a partnership. In the case at bar the transfer of corporate assets was made just before the formation of the partnership for the purpose of forming a partnership and Mrs. Minton neither owned stock in the corporation nor did she contribute substantially of her service or capital. We are cited a number of other cases by title, all of which, in our opinion, are distinguishable from the case at bar on the facts. The Circuit Court of Appeals *118 for the Sixth Circuit has recently refused to sustain a few of the decisions of the Tax Court in family partnership questions somewhat similar to those involved in the case at bar but it would seem that these decisions of the appellate court are to be distinguished from the instant proceeding. In , the court recognized advancements of $500 in 1915 and $1,100 in 1925, made by a wife to her husband who was then conducting a business as an individual, as being a capital contribution to a partnership organized between a husband and wife in 1941. However, in that case the facts disclose that: "* * * From the time of her marriage in 1915 and through 1941, the year in dispute, Mrs. Weizer rendered extensive and important services to William Weizer & Co. * * * She averaged from five to six hours a day in the office and frequently spent evenings and occasionally Sunday at home working at a desk. * * * They jointly consulted the company's attorney when legal advice was necessary. They jointly sat in all conferences with union officials. * * * She was never paid a salary for her services and was not considered an employee." In *119 (June 2, 1948), the appellate court held that where the wife had participated actively and importantly in the building of a business privately conducted by her husband, and the wife, after the formation of a family partnership, continued to work as before, the partnership income was taxable as received under the partnership agreement, even though the capital contributions of the wife and children were much smaller respectively than their incomes from the partnership. In , (July 12, 1948) the appellate court reversed the Tax Court in a case closely analogous to the Woosley case, supra, except that Mrs. Canfield's services to the partnership were probably not as extensive as those of the wife in the Woosley case. In this latter case the Commissioner requested the Court to answer this question: Would anyone seriously maintain that the Commissioner is pledged to accord tax effect to an arrangement by which the wife contributed only ten per cent of the capital and no services and yet is ascribed by the partner's "agreement" ninety per cent of the total business earnings? The Court answered by saying: "The short answer *120 is that neither the Woosley case nor the case at bar discloses any analogy whatever to the supposititious situation." The situation in the instant proceeding, which is not "supposititious" is that if Mrs. Minton's original contribution of $2,950 stayed in the business, that contribution amounted to 1 1/2 per cent of her husband's capital interest in the partnership, while her income from the partnership was based upon twenty per cent of her husband's partnership capital interest just before he transferred one-fifth thereof to his wife. It is therefore our conclusion that Marjorie Minton's income from the Mainzer Minton Company during the taxable years involved is taxable to the petitioner. Decision will be entered under Rule 50.